**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUISITO BARBA and JOEL BARBA, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:20-cv-01557 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW CENTURY CHINESE BUFFET, INC., | ) | |
| A NEW CENTURY CHINESE | ) | |
| RESTAURANT, INC., XIU LAN XIAO, | ) | |
| and FRANK ZHENG, jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Pending before the Court is the Plaintiffs', Luisito Barba ("Luisito") and Joel Barba ("Joel"),[1] Motion for Summary Judgment. (ECF No. 69.) The Plaintiffs seek judgment as a matter of law on certain discrete matters involved in their lawsuit against the Defendants, New Century Chinese Buffet, Inc., New Century Chinese Restaurant, Inc., Xiu Lan Xiao, and Frank Zheng, on multiple claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 333.101, *et seq*. ("PMWA"), and the Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1, *et seq*. ("WPCL") seeking overtime wages and liquidated damages. (ECF No. 69.)

The Court has considered the relevant briefs, responses, replies, and record facts. (ECF Nos. 70, 71, 72, 73, 74, 79, 99, 100, 101, 102, 105, and 106.) The Court also heard oral argument on the Motion. (ECF No. 107.) The matter is now ripe for decision.

The Motion is GRANTED in part and DENIED in part for the reasons that follow.

---

[1] Solely for clarity of reference, given the common surname of the Plaintiffs, the Court uses their given names.

I.      **RELEVANT FACTUAL[2] AND PROCEDURAL BACKGROUND**

Plaintiffs Luisito and Joel Barba allege that Defendants New Century Chinese Buffet, Inc., Frank Zheng, and A New Century Chinese Restaurant, Inc., failed to pay them for overtime hours worked as well as vacation pay while they were employed at New Century Chinese Buffet ("New Century" or "Restaurant"). (ECF No. 39.) The Plaintiffs worked in the kitchen of the Restaurant and Mr. Zheng and Ms. Xiu Lan Xiao owned the Restaurant. Mr. Zheng hired both of the Plaintiffs.

There is some dispute regarding the dates the Plaintiffs worked at the Restaurant, their salaries/terms of compensation, and the working conditions. *See* (ECF No. 70, at 6 (stating the Barbas are hired as heads of the kitchen); Zheng Depo, at 31 (stating that a different employee, Panso, is the head of the kitchen). *See* (ECF No. 79, at 8 (stating that both Plaintiffs were compensated at the salaried rate of $3,000/month); (ECF No. 70, at ¶ 9 (stating that the Plaintiffs were paid salaries of $2,600/month); (ECF No. 39, at ¶¶ 13, 26 (stating that Luisito Barba was a salaried employee making $36,000.00/year and Joel Barba was a salaried employee making $27,000/year.)) Facts germane to the Plaintiffs' Motion and that are not in dispute are as follows.

Joel Barba was originally hired by Mr. Zheng to work in the kitchen of New Century in 2013 before he left to work at a different restaurant, Tokyo Sushi Buffet. (ECF No. 70.) In March of 2016, Mr. Zheng hired Joel's brother, Luisito Barba, to work in the kitchen of New Century in the same position as Joel. (ECF No. 39, at 4.) Mr. Zheng hired Joel and Luisito on a salary basis. (ECF No. 70, at 3.) It was also agreed at the time of employment that Mr. Zheng would provide

---

[2] The factual background is composed of the undisputed evidence in the record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The Plaintiffs set out factual matter and argument relative to Mr. Zheng, but not so much as to Ms. Xiao. More on that below.

Joel and Luisito with free meals, lodging, payment of utility bills and the internet. (*Id.*) The record does not explain in any detail the terms or value of such items. Mr. Zheng paid Joel in cash. (*Id.*) Mr. Zheng was informed by an accountant that it is illegal to pay his employees in cash without reporting such compensation to the federal or state government taxing authorities. (ECF No. 100, at ¶ 3.)

At some later point, Joel left New Century to go work at Tokyo Sushi Buffet. (*Id.* at 4.) In January 2018, Luisito terminated the employment of one employee at New Century and replaced him with Joel, who was rehired at the same position upon the same terms Joel had previously worked at the Restaurant. (*Id.*) Luisito and Joel personally cooked the more involved dishes, engaged in scheduling some of the employees, did partial work on inventory, and worked with and alongside the other five (5) members of the kitchen staff. (ECF No. 71, at ¶ 13.) Joel and Luisito trained new kitchen employees. (*Id.* at ¶ 10.) Joel and Luisito speak various Philippine dialects, and Mr. Zheng speaks a Chinese dialect, so depending on an interviewees' spoken language, sometimes Joel or Luisito would also interview people looking for jobs at New Century. (*Id.*)

New Century is a family run institution, with eight (8) to ten (10) employees. (ECF No. 70, at 5.) There were no formal staff or business meetings or performance reviews. (ECF No. 71, at ¶ 10.) The Plaintiffs did not have offices in or keys to the Restaurant building. (*Id.*)

On September 28, 2020, the Plaintiffs filed a Writ of Summons in the Court of Common Pleas in Beaver County, Pennsylvania, and have requested that this Court "take notice" that they filed their Complaint and that they "filed the writ of summons to preserve the three-year "look back" period pursuant to the wage and overtime laws." (ECF No. 39, at 6.)

Plaintiffs bring claims against each Defendant for violations of the FLSA, the PMWA, and also under the WPCL pursuant to the "participation" theory (Count I), the failure to pay overtime

and base rate wages in violation of the FLSA and PMWA (Counts II & III), and WPCL violations

(Count IV) seeking the payment overtime wages, attorneys' fees, and liquidated damages. (ECF

No. 39.)[3]

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be

granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made

and supported, "an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out

specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary

judgment should, if appropriate, be entered against that party."

A material fact is a fact whose resolution will affect the outcome of the case under

applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has

the initial burden of proving to the district court the absence of evidence supporting the non-

moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Country Floors, Inc. v.*

*Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). Further, "[R]ule

56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to

demand at least one sworn averment of that fact before the lengthy process of litigation

continues.'" *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (quoting

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990)). The burden then shifts to

the non-movant to come forward with specific facts showing a genuine issue for trial. *Matsushita*

---

[3] The WPCL does not create a substantive right to compensation but is a vehicle for the recovery of unpaid compensation otherwise due, along with provisions for the payment of penalty amounts and counsel fees.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence— more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment).

Where the Court concludes that the record presented is inadequate or inconclusive, denial of a summary judgment motion is appropriate. *Taylor v. Truman Med. Ctr.*, No. 03-CV-0001, 2006 WL 2796389, at *3 (W.D. Mo. Sept. 25, 2006).

## III.   DISCUSSION

The Plaintiffs' Motion for Summary Judgment argues that the Plaintiffs are entitled to judgment as a matter of law as to certain discrete matters involved in this case because there is no genuine dispute of material fact as certain issues relevant to the Plaintiffs' claims under the FLSA and the PMWA, and the Defendants' defenses to such claims. (ECF No. 69, at 3.) The Defendants oppose this Motion.

The relevant issues now before the Court include 1.) whether the Plaintiffs qualify under the executive exemption of the FLSA/PMWA such that they would not be due to be paid premium pay for overtime, e.g. work in excess of forty hours in a given workweek; 2.) whether Defendants can assert an unclean hands defense as to statutory wage and hour liability; 3.) whether the individual Defendants can be held personally liable for the alleged FLSA and PMWA violations; and 4.) whether the Defendants' violations were "willful" under the FLSA thereby extending the statute of limitations period from two to three years under federal law,  and allowing for the award of liquidated damages. The Court will consider these matters in turn.

A.  <u>Whether the FLSA's Executive Exemption Could Apply in This Case</u>

The Plaintiffs argue that the "executive exemption" as to overtime compensation does not apply to them as a matter of law because, in a general sense, their duties were not managerial in nature. (ECF No. 69, at 1.) The Plaintiffs explain that neither Luisito nor Joel had an office in the Restaurant, keys to the Restaurant, or authority over or access to the Restaurant's finances. (ECF No. 69-1, at 5.) They were also not permitted to place orders with vendors for kitchen needs. (*Id.*)  The Plaintiffs say that they spent the majority of their time performing non-exempt work, particularly cooking meals for customers. (*Id.* at 18.)

The Plaintiffs argue that no reasonable jury could conclude that two employees that do not speak the same language as any other employee, never opened or closed the Restaurant, did not have keys to the Restaurant, did not have access to the Restaurants finances, and whose duties included cooking, mopping, taking out garbage, washing dishes, and preparing food could qualify for the FLSA's executive exemption. (ECF No. 72, at 9.) Thus, they say, they are entitled to summary judgment in their favor on the issue of whether the Defendants may rely on the executive exemption to the involved minimum wage laws. *Baum v. Astrazeneca LP*, 372 F. App'x 246, 248 (3d Cir. 2010) (analyzing a PMWA exemption argument under the FLSA test because "Pennsylvania courts have looked to federal law regarding the [FLSA] for guidance in applying the PMWA.") *Szabo v. Muncy Industries, LLC*, No. 21-CV-468, 2023 WL 2472599, at n.55 (M.D. Pa. Mar. 10, 2023) (analyzing the parties' executive exemption claim pursued under the FLSA and the PMWA as one statute and one test because the laws are "essentially identical."); *Pa. Dept. of Labor and Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003) (applying federal case law regarding the FLSA to a

PMWA claim because "it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it.").

The Defendants argue in opposition that the duties of the Plaintiffs were such that they were the heads of the kitchen, so they needed to "know everything" in the kitchen and had to handle all of the tasks involved in operating the kitchen. (ECF No. 70, at 4–5.) The Defendants state that the Plaintiffs needed to use their experience to suggest new dishes, run kitchen staffing, train new kitchen staff, and hire and fire staff without Mr. Zheng's permission. (*Id.*) The Defendants argue that the Plaintiffs were also able to recommend raises for kitchen staff, check the buffet, monitor other cooks, and run the kitchen operation on an overall basis. (*Id.* at 10.) Further, the Defendants argue that the fact that the Plaintiffs' salaries were the highest of all those employed during their term of employment shows that the Plaintiffs had the management of the business as their primary duty. (ECF No. 79 at 7.) The Defendants argue that all of the Plaintiffs' tasks were centered around managerial functions even if they involved some cooking and other "front line" duties, and therefore the executive exemption should apply (or at least for these purposes, cannot be held to be wholly unavailable as a matter of law). Thus, for purposes of the Plaintiffs' Motion, the Defendants contend that the successful assertion of that exemption to the payment of premium overtime pay cannot be held to be unavailable as a matter of law.

Section 213(a)(1) of the FLSA provides that the overtime compensation provisions of § 207 do not apply with respect to "any employee employed in a bona fide executive, administrative, or professional capacity." The FLSA exemptions are to be narrowly construed against the employer. *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006) (citing *Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 183 (3d Cir. 2000)). The FLSA provides generally that covered, nonexempt employees must receive not less than a stated

minimum wage for all hours worked, and overtime premium pay for all hours worked over forty hours in a workweek.

The burden of proving an exemption falls on the employer. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). So, as in any summary judgment situation, the question here is whether the Defendants have advanced sufficient record evidence such that a jury could conclude the exemption applies.

The executive exemption is defined and explained in DOL regulations at 29 C.F.R. §§ 541.100–.106 (2005). The general rule for exemption of executive employees provides in relevant part that: (a) the term "employee employed in a bona fide executive capacity" means any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Davis*, 453 F.3d at 557 (citing 29 C.F.R. § 541.100 (2005))

The employer has the burden to demonstrate "plainly and unmistakably" that an employee qualifies for the exemption. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991). The regulations set forth a qualitative, not quantitative, test for whether an employee is a bona fide executive. *Soehnle v. Hess Corp.*, 399 F. App'x 749, 752 (3d Cir. 2010). And in assessing which duties are "primary," the Court considers the relative importance of managerial/non-managerial duties, frequency of discretionary decisions, freedom from supervision by others, and the

relationship of the employee's salary to wages of non-exempt employees. *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1144 (3d Cir. 1983).

Under the relevant test, primary duty does not "connote the most time-intensive of an employee's functions, but instead refers to the 'principal, main, major or most important' duty performed by the employee regardless of how much time she devotes to it." *Soehnle*, 399 F. App'x at 752 (citing 20 C.F.R. § 541.700(a)). The DOL identifies "management" to include interviewing, selecting, and training employees; setting/adjusting rates; maintaining record; appraising employee productivity; planning work; determining techniques; determining equipment; providing safety or security; controlling budget; monitoring legal compliance measures. 29 C.F.R. § 541.102. In *Soehnle*, even though the employee only spent thirty minutes to one hour per day doing managerial functions, they were the most important aspects of the job. Though the employee spent most time doing non-exempt work, a qualitative assessment of her responsibilities demonstrated that her primary duty was management. *Soehnle*, 399 F. App'x at 752.

To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the suggestions are relied upon. An employee's suggestions and recommendations must still be deemed to have "particular weight" even if a higher-level management's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision. 29 C.F.R. § 541.105. In *Davis*, the court held that plaintiff's disciplinary powers appeared limited because in the thirty (30) years of service, they only supported the termination

of two employees. 435 F.3d at 558. In *Del Valle v. OfficeMax North America*, the court acknowledged that the employee's suggestions and recommendations as to hiring and firing were given particular weight because the facts showed that he interviewed candidates when there was not a manager there. 680 F. App'x 51, 63–64 (3d Cir. 2017). He acknowledged that a superior went by what he thought after the interview. *Davis*, 453 F.3d at 557; 29 C.F.R. § 541.100 (2005).

The Court concludes that summary judgment cannot be granted on this issue because there are material factual issues as to exactly what the duties of the Plaintiffs were, when they did their various alleged tasks, and how often they accomplished them. In short, the record presents a mixed bag of facts that is not conclusive in favor of either party. The Court recognizes that many of the tasks the Plaintiffs had were on the "front line" of the Restaurant, such as cooking, but the record also reveals that the Plaintiffs were hired to perform, and did perform, at least some leadership functions consistent with managerial duties, including those set out above, such as training staff or choosing menu items. Additionally, the Court notes that more analysis would need to be done by the parties on the applicability of the relevant exemption in this instance at the time of trial, because FLSA exemptions are typically applied on an individual workweek basis, 29 C.F.R. § 778.104, and employees performing exempt and non-exempt duties in the same workweek are typically not exempt, but some workweeks may fall within the scope of the exemption while others do not. *Marshall v. Western Union Tel. Co.*, 621 F.2d 1246, 1248 (3d Cir. 1980); *Brennan v. Western Union Tel. Co.*, 561 F.2d 477, 482 (3d Cir. 1977). However, neither party addresses these concepts in their briefing. Instead, the briefs of the parties are noteworthy in this regard for their broad generalities. So, the Court is not convinced that a reasonable jury would be compelled to conclude as a matter of law, based on this record, that the

Plaintiffs did not qualify for the executive exemption, at all nor ever, during the relevant period, which is the premise of the Plaintiffs' Motion on this issue.

The Plaintiffs' Motion will be denied without prejudice as to the applicability of the executive exemption.

      B. <u>Whether the Asserted Defenses of Unclean Hands or Waiver are Barred as a Matter of Law</u>

The Defendants attempt to argue that the affirmative defenses of unclean hands, waiver, and fraud apply in this instance barring recovery by the Plaintiffs. (ECF No. 94, at 10.) The Plaintiffs want summary judgment in the nature of a ruling from this Court that such defenses cannot apply as a matter of law generally, or, at minimum, in this case.

The Defendants state that the Plaintiffs accepted employment at New Century as salaried employees with no overtime to be paid. (ECF No. 79, at 8.) The Defendants allege that there were never negotiations for hourly wages, and there was no expectation of overtime compensation by either of the Plaintiffs. (*Id.*) The Defendants state that the Plaintiffs engaging in "double-dealing with the Defendants went to the heart of their equitable relationship and serves as the basis for the matters now in controversy." (*Id.* at 8–9.) The Defendants maintain that the Plaintiffs fully understood and agreed to the terms of their employment and were closer to being architects of any wrongdoing rather than the victims of it. (ECF No. 70, at 11.) The Defendants state repeatedly that it was the Plaintiffs themselves who insisted on being paid in cash in order to avoid taxes. (*Id.*; ECF No. 71, at ¶ 16.) The Defendants argue that the Plaintiffs current claim that they requested Mr. Zheng put them on the payroll and treat them as W-2 employees is false. (ECF No. 70, at 11.)

  The Plaintiffs argue that the defense of unclean hands simply is not applicable in this instance, and tax fraud allegations that the Defendants advance against the Plaintiffs do not bar the

Plaintiffs from bringing their claims under the FLSA/PMWA. (ECF No. 72, at 2, 10.) The Plaintiffs' assert that their own alleged wrongdoing (not paying their taxes on the money they earned) is not connected directly with the matters in this case because whether any parties were accurately documenting earnings and expenses for the payment of the Plaintiffs' taxes did not relieve the Defendants from their duties under the FLSA and PMWA to properly compensate non-exempt employees for all hours worked, including at a premium rate for hours over 40 in a given workweek. (ECF No. 72, at 10–11.) Further, unclean hands is an equitable defense, the Plaintiffs argue, and the Plaintiffs request monetary and liquidated damages, not equitable relief. (*Id.*)

The Defendants present no case law obviating their FLSA/PMWA responsibility to pay employees according to applicable federal and state wage and hour laws due to the alleged unclean hands of the Plaintiffs, or the waiver of such rights or the alleged fraud of the Plaintiffs. In fact, the theory that an employer can contract its way out of FLSA responsibilities by an employee's waiver is contrary to the general rule that overtime payment rights pursuant to the FLSA are not waivable. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 136 (3d Cir. 1999) ("The nonwaivable nature of the provisions of the FLSA is well-settled. . . .").

Substantive rights under the FLSA and PMWA are non-waivable; even if an employee purports to agree to particular terms of employment, those terms may still violate the involved statutes. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016) (denying a portion of a settlement agreement because of the broad language that risked a waiver of the employee's PMWA rights); *Haley v. Bell-Mark Techs. Corp.*, No. 17-CV-1775, 2019 WL 1925116, at *7 (M.D. Pa. Apr. 30, 2019) (denying approval of settlement agreement because it explicitly waived the employee's rights under the PMWA, WPCL, and the FLSA).

The Supreme Court has made it plain that the FLSA does not permit the private waiver of FLSA claims. *Brooklyn Saving Bank*, 324 U.S. at 704. As a broad matter, to assert a successful unclean hands defense in a general sense, the defendant must prove that the "plaintiff's conduct is inequitable and that it involves the subject matter of the plaintiff's claim." *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 530–31 (E.D. Pa. 2007) (quoting *Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 855 (3d Cir. 1984)). Inequitable behavior can include fraud, deceit, unconscionability, or bad faith. The Third Circuit has held that a defendant asserting unclean hands must present "clear, convincing evidence" of "egregious misconduct" by the plaintiff. *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004). "Egregious misconduct" can be in the form of "fraud, unconscionability, or bad faith on the part of the plaintiff." *S & R Corp. v. Jilly Lube Int'l, Inc.*, 968 F.2d 371, 377 n.7 (3d Cir. 1992). There must be a close nexus between the plaintiff's alleged misconduct and the defendant's conduct. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). And the defendant must allege that he was injured "as a result of the misconduct." *Pharmacia Corp v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 610 (D.N.J. 2003) (quoting *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 980 F.2d 723 (3d Cir. 1992)).

The Court concludes that these specific asserted defenses by the Defendants are tantamount to the argument that the Plaintiffs contracted away their statutory rights, or otherwise forfeited them by their own requests for cash payments without deductions, or as part of some sort of "deal" with the Defendants. *See* 29 C.F.R. §§ 778.316, 778.317. While the Court need not rule broadly whether, ever, one or more of these defenses could be available under the involved statutes (although it harbors substantial doubts that such could ever be the case), it can say with confidence here that the duty to pay according to federal and state wage and hour laws was solely that of those

Defendants who qualify as "employers" under the law, and were not excused from those duties because the Plaintiffs wanted to be paid in cash (even for their own alleged unlawful tax evasion purposes), or were willing to accept the compensation in the form in which it was paid. Consequently, the defenses of unclean hands, waiver, or fraud are not defenses to an asserted lack of FLSA, PMWA or WPCL compliance by the Defendants in the circumstances alleged here. The Court grants Summary Judgment for the Plaintiffs on this issue.

This ruling, however, is not to the prejudice of the position of any party that the terms of employment of the Plaintiffs may be covered by one or more payroll practice doctrines recognized under the FLSA and/or the PMWA, including but not limited to the "fixed wage for fluctuating workweek" principle, 29 C.F.R. §§ 778.114, 778.310, 778.403, or that things of value provided to the Plaintiffs by the Defendant as a consequence of their work, including housing or meals, are or are not considered to be part of the "regular wage" or mandated compensation of the Plaintiffs, 29 C.F.R. §§ 778.108, 778.116, or are (or are not) to be considered in the calculation of any amount of compensation actually provided or payable to the Plaintiffs. In such regards, the record is both vague and woefully short of that necessary for the Court to rule definitively at this juncture on the application (or not) on any such matters. *See* Zheng Affidavit at ¶¶ 5–11 (ECF No. 71-9.)

### C.   Whether named individual Defendants can be held personally liable

The Plaintiffs argue that individuals may be held liable as employers under § 203(d) of the FLSA. (ECF No. 69-1, at 31.) The Plaintiffs argue that the Court should impose individual liability as a matter of law on Mr. Zheng and Ms. Xiu Lan Xiao for violations of the FLSA § 203(d) which, they allege, follows the same protocol as the WPCL's "participation theory." (ECF No. 69-1, at 29.)

The Plaintiffs allege that Mr. Zheng and Ms. Xiao engaged in illegal activities while acting within the scope of their employment by 1.) failing to post legally required signage informing employees of their rights and denied the statutorily wages to employees for all hours worked, 2.) being present at the Restaurant, therefore knowing the long hours the Plaintiffs worked; 3.) and being engaged in financial matters of the Restaurant by signing checks. (ECF No. 69-1, at 29–30.) The Defendants continue to deny all wrongdoing, thereby denying Plaintiffs' claims that they as individuals are liable. (ECF No. 101.)

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Third Circuit has held that the FLSA defines employer "expansively" and with "striking breadth." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012) (citations omitted). Further, in addition to the corporate entity being considered an employer under the FLSA, "a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA." *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014). To determine whether a joint employer relationship exists, courts consider a list of factors that is non-exhaustive:

> (1) The alleged employer's authority to hire and fire the relevant employees;
> (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;
> (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and
> (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Thompson*, 748 F.3d at 149.

15

Courts have construed the FLSA individual liability theory to be the same for the PMWA. *Silla v. One Three Five, Inc.*, No. 17-1393, 2018 WL 3122379, at *3 (W.D. Pa. June 26, 2018) ("Given the substantially similar language of the PMWA, this Court sees no reason to construe that statute differently.").

In light of these principles of potential individual liability under the FLSA/PMWA, consideration of the "participation theory" asserted by the Plaintiffs is unnecessary and also does not seem to apply here because this does not deal with a larger business decision that affects employees. It rather deals with an employer's direct treatment of employees. Usually, the participation theory is applied against those who use a certain corporate form as a vehicle to engage in illegal or tortious conduct. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89–90 (Pa. 1983).

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

*Id.* at 90.

The case that the Plaintiffs cite to in order to advance their participation theory argument, *Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), does not mention the FLSA or PMWA, and it seems that the Plaintiffs are arguing that despite this, the Court should still apply the participation theory to the FLSA. (ECF No. 69-1, at 30.)

However, the Court need not go there at all. Other courts have established that an individual may be held liable as an employer for violations under the FLSA/PMWA. *See Burroughs v. MGC Servs., Inc.*, No. 08-CV-1627, 2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009) (explaining how individual liability is possible under the FLSA and the PMWA); *Scholly v. JMK Plastering, Inc.*,

16

No. 07-CV-4998, 2008 WL 2579729, at *4 (E.D. Pa. June 25, 2008) (stating that because the PMWA and the FLSA define "employer" in substantially similar terms, they both carry the potential for individual liability and holding that Pennsylvania law does not shield corporate officers from individual liability for personal tortious conduct); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 589 (9th Cir. 1993) (holding that an individual can be personally liable as an employer under the FLSA).

Since the PMWA and the FLSA have similar language regarding the definitions of employers and wage payment requirements, it would be inconsistent to construe practically identical language to have different meanings, so individual liability is permitted under both statutes. *See Scholly*, 2008 WL 2579729, at *4 (explaining that the similar language between the statutes can only lead a court to interpret them the same way).

If the Plaintiffs are able to point to circumstances where Mr. Zheng/Ms. Xiao, acting in an employer status, engaged in unlawful conduct toward the Plaintiffs, the Plaintiffs may be able to prevail on an individual liability theory under the FLSA and the PMWA. However, the sparse facts the Plaintiffs point to of a failure to post signage, and stating the Defendants "should have known" about the long hours the Plaintiffs worked, or that the Defendants were engaged in financial tortious conduct because they were the ones who wrote checks, is simply not enough at this point for the Court to conclude that a reasonable jury would be required to find as a matter of law that they should be held personally liable as a matter of law. The Motion for Summary Judgment in these regards will be denied. It will be up to the Plaintiffs to prove the facts requisite for the imposition of individual FLSA/PMWA liability on Mr. Zheng and/or Ms. Xiao at trial.

D. <u>Willfulness under FLSA</u>

The final issue before the Court in this Motion is whether the Defendants' conduct was

"willful" under the FLSA thus extending the Statute of Limitation and potentially providing for liquidated damages. The Plaintiffs say that it was, as a matter of law; the Defendants say that it was not, or at least for these purposes, is not so as a matter of law.

In general, FLSA actions must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a); *Souryayong v. Lackawanna Cnty.*, 872 F.3d 122, 126 (3d Cir. 2017); *Acosta v. Osaka Japan Rest., Inc.*, No. 17-CV-1018, 2018 WL 3397337, at *11 (E.D. Pa. July 12, 2018). For PMWA claims, overtime violations always have a three-year statute of limitations period regardless of whether the violations are willful. *Garcia v. Vertical Screen, Inc.*, 580 F. Supp. 3d 9, n.7 (E.D. Pa. 2022). "Having afforded its citizens greater protection than that offered by the FLSA, the PMWA is not preempted by the FLSA in this regard." *Gonzalez v. Bustleton Servs., Inc.*, No. 08-4703, 2010 WL 1813487, at *6 (E.D. Pa. Mar. 5, 2010).

A violation is "willful" within the meaning of the FLSA when "the employer either knew or showed reckless disregard" for whether the conduct in question violated the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988); *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 810 (W.D. Pa. 2013). If an employer acts reasonably, it is not acting willfully. Courts have also found requisite knowledge or indifference for a willfulness conclusion where the employer has a history of past FLSA violations. *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999).

For "willful" FLSA violations, liquidated damages constitute "Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers'

and to the free flow of commerce, that double payment must be made. . . ." *Brooklyn Sav. Bank*, 324 U.S. at 707. A court may deny a claim for liquidated damages if an employer can show "good faith and reasonable grounds for failing to comply with the FLSA." *Solis*, 934 F. Supp. 2d at 814–15 (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 127 (3d Cir. 1984)). Liquidated damages, in this way, have the purpose of being compensatory in nature, not punitive. *Solis*, 934 F. Supp. 2d at 814; *see also Mclaughlin*, 486 U.S. at 137–38 (Marshall, J., dissenting) (explaining that a finding of willfulness under the FLSA does not lead to the punitive sanction of double damages, but merely extends the period during which an "unlawfully underpaid employee may recover compensatory damages."). In *TransWorld Airlines, Inc. v. Thurston*, the Supreme Court emphasized that evidence showing a disregard for a statute and indifference to its requirements is enough to show willfulness. 469 U.S. 111, 117 (1985).

Under the Pennsylvania Wage Payment and Collection Law ("WPCL"), an employee is entitled to a liquidated damages if he demonstrates that there is no good faith dispute justifying the employer's non-payment of wages, and the claim of liquidated damages may be in the amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever of the two amounts is greater. 43 Pa. Cons. Stat. § 260.10; *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 962 (Pa. Sup. Ct. 2011).

The Plaintiffs argue that the Defendants' conduct was "willful" under the FLSA, entitling them to backpay, liquidated damages, and the extended FLSA statute of limitations period because of their alleged disregard for the legality of their payment practices and misclassification of Plaintiffs' positions. (ECF No. 69, at 23.) The Plaintiffs emphasize that the Defendants did not require the Plaintiffs to record their hours worked. (*Id*). Also, the Plaintiffs argue that Mr. Zheng was fully aware of his illegal payment methods, as exemplified by his failure to make required

withholding and transmittal of withheld taxes to the state or federal government. (ECF No. 100, at ¶ 2.) Further, Mr. Zheng was informed by an accountant that it is illegal to pay employees in cash without reporting compensation to the government for tax purposes. (*Id.* at ¶ 3.) The Plaintiffs also state that the defense of consent should not apply because someone cannot waive his own FLSA/PMWA rights, so he similarly cannot consent to his rights being violated. (ECF No. 99, at 4–5 (citing *Griffin v. Don E. Bower, Inc.*, No. 16-CV-2412, 2017 WL 4310091, at *5 (M.D. Pa. Sept. 28, 2017) (discussing the Family and Medical Leave Act, the court states "no authority that consent is a valid affirmative defense to a statutory action"); *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 136 (3d Cir. 1999) (holding that employees cannot waive their rights under the FLSA); *Vasil v. Dunham's Athleisure Corp.*, No. 14-CV-690, 2015 WL 1296063 (W.D. Pa. March 23, 2015) (holding that violations of the FLSA and PMWA give rise to a statutory remedy which is not grounded in the employment agreement).

The Plaintiffs further allege that it is undisputed that Luisito began working for New Century in March of 2016, and this action began on September 28, 2020, with the first filing of a Writ of Summons on behalf of the Plaintiffs in the Court of Common Pleas of Beaver County. (ECF No. 39, at ¶ 35.) So the Plaintiffs state that, from September 28, 2017, to March 15, 2020 (when New Century closed due to the COVID-19 pandemic), Luisito undisputedly worked thirty-two (32) hours of overtime per workweek (e.g. 40 hours straight time plus that amount of overtime). (ECF No. 69-1, at 27.)[4]

---

[4] Defendants allege that Luisito was to be paid $36,000 per year, and based on a seventy-two (72) hour work week, this would amount to $9.62 per hour. (*Id.*) Therefore, the Plaintiffs calculate the unpaid overtime wages as $19,701.776 because $9.62/hour x .5 x 4096 hours). Additionally, Plaintiffs argue that due to the willfulness of the Defendants' actions, Luisitio is also entitled to liquidated damages of $19,701.76, totaling $39,403.52 absent attorneys' fees. (*Id.*)

Plaintiffs also allege that the Defendants contend that Luisito and Joel were paid the same amount, so for Joel's lesser amount of time working at New Century, he is entitled to $20,317.44 in unpaid wages ($9.62/hour x 0.5 x 4224 hours) and an equal amount of liquidated damages totaling $40,636.88, absent attorneys' fees. (*Id.* at 28.)

The Defendants address the Plaintiffs' willfulness argument by stating that the Plaintiffs should be deemed to have waived any rights for relief they may have against the Defendants' alleged willful conduct in light of their own intentional conduct. (ECF No. 70, at 13.) Further, the Defendants allege that the "employment agreement" with them was not that they agreed to the non-payment of overtime, it was that they were to be hired as salaried kitchen managers who, due to the nature of their positions, were not entitled to overtime payment. (ECF No. 101, at 3.) The Defendants argue that the Plaintiffs misunderstand their position on "consent" and point to the Plaintiffs' consent to becoming employed in an executive capacity on a salary basis, subject to an exemption under § 213(a) of the FLSA to the minimum wage and overtime requirement under § 207. (ECF No. 101, at 5.)

The Court concludes that there is a genuine dispute as to material facts on the issue of "willfulness" such that the Plaintiffs are not entitled to judgment as a matter of law, but not for the reasons on which the parties center their arguments. First, for the reasons noted above, the Defendant may not prevail on the basis that they were simply paying the Plaintiffs in the manner the Plaintiffs wanted. Further, the Plaintiffs can't prevail on this point simply by arguing that the Defendant was violating the federal and state tax laws by paying the Plaintiffs in cash with no withholding of taxes. That would be a serious matter, but it is a different matter than this one. Further, by simply alleging that the Plaintiffs were also at fault, the Defendants do not show good

---

Plaintiffs next argue that they are entitled to a higher amount of damages under the PMWA. (*Id.*) Plaintiffs calculate Luisito's unpaid wage damages under the PMWA as $106,373.12. (*Id.*) The Plaintiffs then assert that Luisito is entitled to an additional twenty-five percent (25%) in liquidated damages totaling $26,593.28. (*Id.*)

Thus, the Plaintiffs argue that Luisito is entitled to a total of $132,966.40 in damages excluding attorneys' fees. By this same calculation, the Plaintiffs argue that Joel's total damages would be $137,109.10 not including attorneys' fees. (*Id.* at 28–29.)

The Court need not, and does not, make any assessment of the accuracy of such asserted calculations.

faith or reasonable grounds for failing to comply with FLSA/PMWA requirements, as required by *Solis* and *Braun*. The *Thurston* standard could end up being satisfied here if the Plaintiffs can prove that the Defendants not only knew they were violating the tax laws, but were also violating the wage and hour laws, e.g., by actually harboring a good faith doubt that the Plaintiffs were eligible for the "executive exemption" as to the payment of overtime pay and did not make a good faith effort to confirm or compliance. *See e.g.*, *Martin v. Selker Bros*, 949 F.2d 1286, 1296 (3d Cir. 1991) (finding a willful FLSA violation by a gas station operator who suspected that paying operators a percentage of gas sold instead of the minimum wage may be illegal but did it anyway).

The Plaintiffs argue that the Defendants knew or should have known that they were violating the FLSA and PMWA because they were informed by an accountant that their cash payment practices were unlawful. (ECF No. 100, at ¶ 3 (citing ECF No. 105, 12–13 (Second Deposition of Frank Zheng)).) But the record indicates that such advice was as to the use of cash payments without tax withholding. When asked whether he was aware that paying his employees in cash without reporting it, Mr. Zheng stated "My accountant told me about this, but for us, Chinese restaurant, [it] is very hard to get someone to work for us, and they asked to be paid in cash and I met with their requirement." (*Id.*) The payment in cash is not, on this record, a *per se* FLSA/PMWA violation. The question is whether Plaintiffs were paid in full as required by law, not the form of its payment.

The issue here is whether one or more Defendants will be charged with "willfully" violating the wage and hour laws, not the tax laws. On that former issue, the record does not conclusively demonstrate that the Defendants were violating the wage and hour laws and knew it (or acted with reckless disregard of their duties. This issue, like the application of the executive exemption, will be bound up in the overall factual matters to be unwound at trial.

## **CONCLUSION**

The Plaintiffs' Motion for Summary Judgment as to the executive exemption issue is DENIED without prejudice because there are genuine issues of material fact that prevent the Court resolving it as a matter of law. As to the issue of whether Mr. Zheng/Ms. Xiao can be held personally liable for the statutory violations alleged, that matter will need to be resolved at trial because the Court concludes that while such personal liability under the FLSA and PMWA is possible, the record as advanced at this point is not so one-sided such that the application of such matters may be resolved via summary judgment. That matter will need to be resolved at trial. Therefore, Summary Judgment is DENIED without prejudice on that issue as well. The Defendants' affirmative defenses of unclean hands, waiver, and consent are STRICKEN and Summary Judgment is GRANTED for the Plaintiffs on those discrete and specific defenses. Finally, the question of whether the conduct of the Defendants constituted willful violations of the applicable state and federal laws is, for the reasons stated, sufficiently fact-bound so as to preclude the grant of summary judgment on that issue also, and the Motion is DENIED without prejudice in those regards also.

An appropriate Order will be entered, and a trial scheduling conference will be set by further Order.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  September 29, 2023
cc:      All counsel of record